IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ARCADE J. COMEAUX, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-01-1411 |
| | § | |
| WARDEN RICK THALER, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

State inmate Arcade J. Comeaux Jr. (TDCJ #841331, former TDC #376369) has filed a complaint under 42 U.S.C. § 1983, alleging violations of his civil rights and the Americans with Disabilities Act, among other things, stemming from the conditions of his confinement in the Texas Department of Criminal Justice - Correctional Institutions Division (collectively, "TDCJ"). After reviewing all of the pleadings as required by 28 U.S.C. § 1915A, the Court authorized service of process and requested an answer from two of the defendants named in the complaint. The defendants have filed a motion for summary judgment, arguing that Comeaux is not entitled to the relief that he seeks. (Docket Entry No. 89). Comeaux has not filed a response. Instead, he has filed a motion for a temporary restraining order. (Docket Entry No. 98). After considering all of the pleadings, the summary judgment evidence, and the applicable law, the Court grants the defendants' motion and dismisses this case for reasons set forth below.

# I.    BACKGROUND AND PROCEDURAL HISTORY

Court records show that Comeaux was convicted initially on April 23, 1984, following his guilty plea to charges of indecency with a child, for which he received a sentence of twenty years' imprisonment. *See Comeaux v. Cockrell*, Civil Action No. H-01-1670 (S.D. Tex.) (Docket Entry No. 16). After Comeaux was released on mandatory supervision, he was convicted again on June 3, 1997, of committing aggravated sexual assault of a child, for which he received a life sentence. *See Comeaux v. Cockrell*, Civil Action No. H-01-3405 (S.D. Tex.); *see also Comeaux v. State*, No. 01-99-00147-CR, 1999 WL 977832 (Tex. App. — Houston [1st Dist.] Oct. 28, 1999). Comeaux remains in custody of TDCJ at the Estelle High Security Unit in Huntsville, Texas.

The primary defendant in this case is Warden Rick Thaler, who was employed by TDCJ at the Estelle High Security Unit at the time the complaint was filed.[1] The Court also authorized service and requested an answer from Doug Dretke, who was TDCJ's Director at that time.[2] (Docket Entry No. 25). A thorough discussion of Comeaux's claims requires an overview of his custodial history as it relates to his conditions of confinement.

---

[1]    The complaint names several other individuals employed by TDCJ, including Dr. Bobby Vincent, Major William De La Rosa, Lieutenant Mark Biscamp, Lieutenant Philip Graham, Lieutenant Curtis Roberts, Lieutenant Michael Butcher, Sergeant Stephen Nicholas, Sergeant Brugman, Sergeant Travis Rowe, Sergeant Monica Steinbuck, Sergeant Adriane McCoy, physician's Assistant Randall Healy, Director of Nurses Anderson, Nurse Kelly Dusek Young, Nurse Patricia Freeman, an unknown John or Jane Doe grievance investigator, Officer Alicia White, Lieutenant Robert Quada, and Dr. Jason Calhoun. The Court did not request an answer from these individuals because, for reasons outlined below, he fails to state a claim upon which relief can be granted for purposes of 28 U.S.C. §1915(e)(2)(B).

[2]    The complaint also names former TDCJ Director Wayne Scott, who was replaced by Douglas Dretke. Sometime after the Court requested an answer from the defendants in this case, Dretke retired. On June 1, 2006, Nathaniel Quarterman replaced the former respondent, Doug Dretke, as Director of the Texas Department of Criminal Justice - Correctional Institutions Division.

After Comeaux was convicted and sentenced to life imprisonment in 1997, he was initially assigned to TDCJ's Telford Unit.   At that time, Comeaux alleges that an assortment of medical problems left him confined to a wheelchair.  Comeaux claims to suffer from "hemi-plegia" as the result of a stroke.  Comeaux claims that he is paralyzed on his left side and that he has weakness on his right side, which make it impossible for him to ambulate.  In addition, he claims to suffer from a variety of ailments, including high blood pressure, asthma, "heart problems," muscle spasms, and thyroid disease.  Comeaux claims that he is "double incontinent" and that he must wear diapers and a catheter.  Comeaux alleges further that he needs assistance to brush his teeth, pick up a food tray, dress, shower, transfer from his wheelchair to his bed, the shower chair, or the toilet, or to shave, to make up his bed, and to clean his cell area.

As a result of his medical condition, Comeaux was reportedly transferred from the Telford Unit to the Jester III Unit.  Comeaux describes the Jester III Unit as a "barrier-free" facility with a "secondary medical care unit" that is fully capable of accommodating his special needs.  The Jester III Unit features the Physically Handicapped Offenders Program ("PHOP"), where Comeaux was enrolled to receive treatment.  On July 11, 1999, however, Comeaux reports that he was "involve[d] in an assault incident" that resulted in his transfer to the Estelle High Security Unit.

The "assault incident" that Comeaux glosses over in his complaint was, in fact, a vicious attack perpetrated by Comeaux.  Specifically, Comeaux assaulted his former wife in the Jester III Unit visitation room by stabbing her with a twelve-inch rod fashioned from the handle of a mop bucket.  *See Comeaux v. Cockrell*, Civil Action No. H-01-1670 (S.D. Tex.) (Docket Entry No. 16).  During that same incident, Comeaux also stabbed the father of another prisoner who attempted to come to the wife's aid.  (*See id*.).  Comeaux was convicted of two counts of aggravated assault with

a deadly weapon stemming from this incident, pursuant to his guilty plea, and he received two additional life sentences as a result. *See Comeaux v. State*, Nos. 01-03-00377-CR, 01-03-00378-CR, 2004 WL 1472074 (Tex. App. — Houston [1st Dist.] July 1, 2004, pet. ref'd).

Comeaux's violent outburst terminated his participation in the PHOP and ended his stay at the Jester III facility. On August 23, 1999, Comeaux was transferred to the Estelle High Security Unit. Following his transfer to the Estelle High Security Unit, Comeaux was assigned to administrative segregation because of his assaultive behavior. According to Assistant Warden Tom Hunt, who works for TDCJ at the Estelle High Security Unit, administrative segregation is the most restrictive classification that a TDCJ inmate can have and is reserved for those inmates who are either deemed a serious risk to the safety of officers and other inmates or who are confirmed affiliates of a designated Security Threat Group or gang. (Docket Entry No. 89, Exhibit B). Inmates who are assigned to administrative segregation are confined to their cells for 23 hours each day. (*See id*.). These inmates get one hour of recreation outside each day and must be restrained and escorted by security personnel any time they are moved from their cell. (*See id*.).

In September of 1999, Comeaux returned to the Jester III Unit for additional therapy. After completing his therapy in May of 2000, Comeaux was discharged from the PHOP and returned to administrative segregation in the Estelle High Security Unit. Soon after he was returned to the Estelle High Security Unit, Comeaux filed a civil rights lawsuit against PHOP Director Dr. Kokila Niak and others at the Jester III Unit. *See Comeaux v. Mackwani*, *et al*., Civil Action No. H-00-3812 (S.D. Tex.). In that lawsuit, Comeaux complained primarily that Dr. Niak wrongfully discharged him from the PHOP therapy program and that his subsequent transfer from Jester III to the Estelle High Security Unit resulted in a denial of adequate medical care. After conducting the requisite

screening under 28 U.S.C. § 1915A, the district court set Comeaux's case for a hearing under *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985) (a "*Spears* hearing"). *See* Civil Action No. H-00-3812 (Docket Entry No. 16).

Shortly after his case against the Jester III defendants was set for a *Spears* hearing, Comeaux filed the pending lawsuit against Warden Thaler and others at the Estelle High Security Unit, complaining that he was being denied proper medical care and that his accommodations were inadequate. *See Comeaux v. Thaler, et al.*, Civil Action No. H-01-1411 (S.D. Tex.). The original complaint also named several TDCJ officials employed at the Jester III Unit. (Docket Entry No. 1). Because of the closely related nature of the claims, the cases were consolidated for purposes of the *Spears* hearing, which was held on May 18, 2001.[3] After the *Spears* hearing, the presiding district court dismissed all of Comeaux's claims in the consolidated cases except for those lodged against Dr. Niak.[4] *See Comeaux v. Mackwani, et al.*, Civil Action No. H-00-3812 (S.D. Tex.) (Docket Entry No. 27). Dr. Niak prevailed after demonstrating that Comeaux was not denied care and that, moreover, medical records and accounts from Estelle Unit personnel showed that Comeaux, who was observed standing and caring for himself on his own, was malingering. *See* Civil Action No. H-00-3812 (Docket Entry No. 70).

---

[3]    Comeaux has asked the Court to transfer all of the exhibits filed in Civil Action H-00-3812 to this case in Civil Action No. H-01-1411. (Docket Entry No. 28). The Court takes judicial notice of the pleadings and exhibits filed in Civil Action No. H-00-3812, as well as the records found in Comeaux's many other lawsuits in this district.

[4]    The complaint filed by Comeaux in Civil Action No. H-00-3812 was assigned to the Honorable Nancy F. Atlas of the Southern District of Texas, Houston Divison, while the complaint filed by Comeaux in Civil Action H-01-1411 belonged to the undersigned. By agreement of the district judges, all cases were transferred to the Honorable Kenneth M. Hoyt of the Southern District of Texas, Houston Division, for the *Spears* hearing held on May 18, 2001.

The Fifth Circuit affirmed the decision in favor of Dr. Niak and the other Jester III Unit defendants. *See Comeaux v. Mackwani, et al.,* No. 03-20776 (5th Cir. March 23, 2005). However, the Fifth Circuit remanded a portion of the consolidated case filed by Comeaux in Civil Action No. H-01-1411 for further consideration of whether Warden Rick Thaler and others at that facility had personal knowledge that the Estelle High Security Unit was not equipped to meet Comeaux's special needs as a handicapped offender and whether the failure to meet these special needs would result in the denial of Comeaux's "basic necessities of life." *Id.* After the case was remanded, Comeaux filed an amended complaint to clarify his remaining claims. (Docket Entry No. 20). In this complaint, Comeaux focuses his claims on the conditions of his confinement in administrative segregation at the Estelle High Security Unit, which he maintains is grossly inadequate to meet his needs. A brief summary of the amended complaint is set forth below.

Comeaux contends that he needs substantial assistance with life's daily activities because he is unable to brush his teeth, pick up a food tray, dress, shower, or transfer himself from his wheelchair to his bed, the shower chair, or the toilet. Comeaux insists that his cell is inadequate because its shower, sink, and toilet are not accessible to him. When he first arrived at the Estelle High Security Unit on August 23, 1999, Comeaux claims that he was left in his cell, sitting in his wheelchair, for fourteen days without any help from TDCJ employees to transfer to his bed. He claims that, during this same time period, he was denied food because he was unable to "retrieve his tray from [the] food slot" and that nursing staff refused to change his diaper. Comeaux alleges that he was left in a filthy cell, sitting in his own waste, from August 23, 1999, through September 9, 1999, with no food, no clean water, and no change of clothing. Comeaux complains that he was denied medical care during this time, on August 30, 1999, because his "disability prevented him from being handcuff[ed]" for a visit to the clinic. Comeaux contends that, because he was denied

access to handicap accessible accommodations during this period of approximately fourteen days, he suffered a "feces rash burn front to back in [the] groin and buttock area," pain, loss of weight, swelling, loss of circulation in his legs, dizziness, unconsciousness, and fear.

Comeaux insists that the Estelle High Security Unit is not capable of meeting his needs because it does not have the following features that are necessary to accommodate his disability: (1) barrier-free facility and housing; (2) wheelchair van transportation and safety restraints; (3) wheelchair accessible showers; (4) handicap shower chairs; (5) anti-slip surface in the shower area; (6) handicap shower railing; (7) a raised toilet seat; (8) accessible storage lockers; (9) hospital mattress and handicap stable mattress railing; (10) a "safe shower bench"; (11) shower extension nozzles; (12) assistance with "activities of daily living" or "ADL," including assistance with transfer from his wheelchair to the shower chair, to bed, and to the toilet; (13) handicap operative utilities or knobs; (14) exercise equipment for handicap inmates; and (15) other unspecified "handicap special need devices."[5] (Docket Entry No. 20, at 19). Comeaux complains that the Estelle High Security Unit lacks adequately trained medical and security staff to meet his special needs as a handicapped inmate and that it also lacks adequate policies for meeting his basic necessities. (*See id.*). Liberally construed, Comeaux argues that he is improperly classified because his disability requires a "wheelchair unit assignment" and a unit with "secondary medical care" capabilities such as those found in a nursing home. (*See id.*). Comeaux adds that he has been denied sufficient

---

[5]     Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519 (1972); *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999). Pleadings filed by a *pro se* litigant are entitled to a liberal construction that affords all reasonable inferences which can be drawn from them. *See Haines*, 404 U.S. at 521. Consistent with the requisite liberal construction, the Court has re-ordered and grouped some of the deficiencies outlined in Comeaux's amended complaint for ease of discussion of his claims.

"indigent supplies" and access to legal materials to communicate with administrative officials, the courts, and others. (See id. at 16, 22-23).

In summary, Comeaux claims that the Estelle High Security Unit fails to comply with Title II of the Americans with Disabilities Act (the "ADA") and the Rehabilitation Act (the "RA"), because he is excluded from "unit program activities" and the ability to meet his "basic necessities" of life as the result of discrimination based "solely" on "his handicap." Because his accommodations are not adequate to accommodate his special needs as a handicapped inmate, Comeaux claims further that his conditions of confinement also violate the prohibition against cruel and unusual punishment found in the Eighth Amendment to the United States Constitution, as made applicable to the states through the Fourteenth Amendment. Comeaux includes a state law claim of negligence and he further asserts that officials have denied him access to courts in violation of federal and state law. Comeaux seeks compensatory and punitive damages from the defendants in their official and individual capacities under 42 U.S.C. § 1983 as a result of the alleged violations of his civil rights. Comeaux also seeks declaratory relief as well as an injunction in the form of a transfer to the "barrier-free" Jester III Unit on the grounds that his current conditions of confinement at the Estelle High Security Unit fail to meet his "basic life necessities and special needs[.]"

The defendants have filed a motion for summary judgment, arguing that they are entitled to official and qualified immunity from Comeaux's complaint and that Comeaux otherwise fails to demonstrate a valid claim for relief. In support, the defendants have provided an affidavit from Assistant Warden Tom Hunt, an affidavit from Dr. Niak, and two surveillance videotapes which show without a doubt that Comeaux is far more functional than he alleges. (Docket Entry Nos. 89, 91). The Court has granted Comeaux a lengthy extension of time to respond, which expired on February 8, 2008. (Docket Entry No. 97). To date, he has not filed a response to the summary

judgment motion. Instead, Comeaux has recently filed a motion for a temporary restraining order and a memorandum of law in support. (Docket Entry Nos. 98, 99). The parties' contentions are addressed below under the applicable standard of review.

## II.     STANDARD OF REVIEW

### A.     The Prison Litigation Reform Act

The complaint in this case is governed by the Prison Litigation Reform Act (the "PLRA"), which mandates the dismissal of a prisoner's civil rights complaint under the following circumstances. Upon initial screening of a prisoner civil rights complaint, the PLRA requires a district court to scrutinize the claims and dismiss the complaint, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted;" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). A reviewing court may dismiss a complaint for these same reasons "at any time" where a party proceeds *in forma pauperis*. 28 U.S.C. § 1915(e)(2)(B) (mandating dismissal where the complaint is "frivolous or malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief"). The PLRA also provides that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c).

"A district court may dismiss as frivolous the complaint of a prisoner proceeding IFP if it lacks an arguable basis in law or fact." *Geiger v Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Siglar v.*

9

*Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). A review for failure to state a claim is governed by the same standard used to review a dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir.) (citing *Moore v. Carwell*, 168 F.3d 234, 236 (5th Cir. 1999) (citation omitted)), *cert. denied*, 537 U.S. 1049 (2002). Under this standard, "[t]he complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1964-65 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint must be dismissed for failure to state a claim if the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974. Of course, "[a] document filed *pro se* is 'to be liberally construed,' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, — U.S. —, 127 S. Ct. 2197, 2200 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### B.    Summary Judgment

The defendants have filed a motion for summary judgment, arguing that the plaintiff's claims fail as a matter of law. Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Under Rule 56, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party bears the burden to show that "there is an absence of evidence to

support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Capitol Indem. Corp. v. United States*, 452 F.3d 428, 430 (5th Cir. 2006).

Once the moving party meets its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). The nonmovant cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). To survive summary judgment, the nonmovant must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action. *See Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citation omitted). Facts and inferences reasonably drawn from those facts should be taken in the light most favorable to the non-moving party. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). Where the non-moving party fails to establish "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," no genuine issue of material fact can exist. *Celotex*, 477 U.S. at 322-23; *Whiting v. University of Southern Miss.*, 451 F.3d 339, 345 (5th Cir. 2006).

The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings. *See Morris v. Covan Worldwide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998); *see also Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994) ("Unsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence."). Likewise, the nonmoving party "cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citations omitted). In the absence of proof, a reviewing court will not assume that the nonmovant could or would prove the necessary facts. *See McCallum Highlands,*

*Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir. 1995). Although the plaintiff proceeds *pro se*, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992); *see also Ogbodiegwu v. Wackenhut Corrections Corp.*, 202 F.3d 265 (5th Cir. 1999) (unpublished table opinion) ("Although the pleadings filed by *pro se* parties are held to 'less stringent standards than formal pleadings drafted by lawyers,' *pro se* parties must still comply with the rules of procedure and make arguments capable of withstanding summary judgment.").

## III.   DISCUSSION

### A.   Official or Sovereign Immunity

As state employees, the defendants argue that the Eleventh Amendment to the United States Constitution bars any claim for monetary relief against them in their official capacity. The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Thus, federal court jurisdiction is limited by the Eleventh Amendment and the principle of sovereign immunity that it embodies. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Vogt v. Board of Comm'rs, Orleans Levee Dist.*, 294 F.3d 684, 688 (5th Cir. 2002).

Unless expressly waived, the Eleventh Amendment bars an action in federal court by, *inter alia*, a citizen of a state against his or her own state, including a state agency. *See Martinez v. Texas Dep't of Criminal Justice*, 300 F.3d 567, 574 (5th Cir. 2002). As an instrumentality of the State of Texas, TDCJ is immune from a suit for money damages under the Eleventh Amendment. *See Talib*

*v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). It is also settled that the Eleventh Amendment bars a recovery of money damages under § 1983 from state employees in their official capacity. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2001); *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998), *cert. denied*, 528 U.S. 851 (1999).

In this case, Comeaux seeks monetary damages from all of the defendants listed in the complaint for actions taken during the course of their employment with the State of Texas. To the extent that Comeaux seeks monetary damages in this case, the Eleventh Amendment bars his claims against the defendants in their official capacity as state employees. Because the defendants are entitled to immunity under the Eleventh Amendment, the defendants are entitled to summary judgment on Comeaux's claims for money damages against them in their official capacity.

## B. Claims for Injunctive Relief from Conditions of Confinement

A narrow exception to Eleventh Amendment immunity exists for suits brought against individuals in their official capacity, as agents of the state or a state entity, where the relief sought is injunctive in nature and prospective in effect. *See Aguilar*, 160 F.3d at 1054 (citing *Ex parte Young*, 209 U.S. 123 (1980)). Comeaux, who alleges violations of the Americans with Disabilities Act and the Eighth Amendment, among other things, seeks injunctive relief from the conditions of his confinement in this case. In particular, Comeaux asks for an injunction directing prison officials to transfer him to the Jester III Unit, which reportedly features the type of "barrier-free" facilities and medical care to meet Comeaux's "special handicap needs." Thus, Comeaux challenges the classification decision that resulted in his assignment to administrative segregation at the Estelle High Security Unit.

Defendants Dretke and Thaler maintain that any claim against them for injunctive relief is moot because they no longer hold the positions that they once did when this lawsuit was filed.[6] More importantly, as Director of TDCJ and the Warden of the Estelle Unit, Dretke and Thaler note that they are not responsible for making classification decisions regarding inmates. As the defendants explain, unit assignments and transfer decisions are made by a three person panel known as the Unit Classification Committee. These decisions, in turn, are authorized by a State Classification Committee. To the extent that Comeaux complains about his assignment to administrative segregation at the Estelle Unit, there is no allegation that any of the individual defendants have any personal involvement with classification decision-making.

Personal involvement is an essential element of a civil rights cause of action, meaning that there must be an affirmative link between the injury and the defendant's conduct. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) (citing *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976)). A supervisor may not be held liable for a civil rights violation under a theory of *respondeat superior* or vicarious liability. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Evett v. DETNTFF*, 330 F.3d 681, 689 (5th Cir. 2003). To the extent that Comeaux sues Dretke and Thaler in their supervisory capacity, supervisory officials can be held liable only if the plaintiff demonstrates: (1) that the supervisory defendant personally participated in the constitutional deprivation, or (2) that enforcement of the supervisor's policy or practice caused the alleged deprivation. *See Alton v. Texas A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999). To be liable based on a policy or practice, the supervisory employee must "implement a policy so deficient that the

[6]      This argument is without merit.  Under Rule 25(d) of the Federal Rules of Civil Procedure, the Court could automatically substitute the defendants' successors as proper defendants in this action.  It does not do so only because, as the defendants' motion for summary judgment shows, Comeaux's complaint is without merit in this instance.

policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation"; or he must know that the system was so deficient as to be unconstitutional and "failed to properly attempt to correct" it, and his inaction must cause the plaintiff's injuries. *Thompkins*, 828 F.2d at 304; *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998). A supervisory official may be held individually liable under § 1983 through the enforcement of a policy only "if that official demonstrates a deliberate indifference to constitutionally protected rights." *Alton*, 168 F.3d at 200; *see also Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994) (en banc).

Comeaux does not allege or show that any of the defendants listed in the complaint have authority over his classification. Under these circumstances, Comeaux's conclusory allegations and generalized assertions are not sufficient to state a claim; particular facts are required to specify the personal involvement of each defendant. *See Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992); *Fee v. Herndon*, 900 F.2d 804 (5th Cir.), *cert. denied*, 498 U.S. 908 (1990). Because Comeaux does not establish that the defendants in this case have authority to make decisions concerning his classification, it appears that he has failed to sue the proper party responsible for his unit assignment.

Even if the defendants had authority over Comeaux's classification, Comeaux does not meet the criteria for injunctive relief in this instance. To obtain a preliminary injunction, the applicant must show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) that his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) that granting the preliminary injunction will not disserve the public interest. *See Planned Parenthood of Houston & Southeast Texas v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005). For a permanent injunction to issue the plaintiff must prevail on the merits of his claim and establish that equitable relief is appropriate in all other respects. *See Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 847 (5th Cir.

2004) (citing *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n. 12 (1987) (recognizing that the standard for a permanent injunction is essentially the same as for a preliminary injunction with the exception that the plaintiff must show actual success on the merits rather than a mere likelihood of success)). Injunctive relief in the form of "superintending federal injunctive decrees directing state officials" is an extraordinary remedy. *Morrow v. Harwell*, 768 F.2d 619, 627 (5th Cir. 1985). Emphasizing its extraordinary character, the Fifth Circuit has cautioned that an injunction "should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements." *PCI Transportation Inc. v. Fort Worth & Western Railroad Co.*, 418 F.3d 535, 545 (5th Cir. 2005) (citations omitted).

Because this case concerns prison conditions, the Prison Litigation Reform Act (the "PLRA") imposes additional restrictions on the authority to grant an injunction. The PLRA provides that "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a)(1). In particular, the PLRA prohibits an order granting prospective relief or a preliminary injunction unless the court first finds that such relief is: (1) narrowly drawn; (2) extends no further than necessary to correct the harm; and (3) is the least intrusive means necessary to correct that harm. *See* 18 U.S.C. §§ 3626(a)(1)(A), 3626(a)(2). In considering a prisoner's request for prospective relief, the reviewing court "shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system" caused by the relief and shall respect the certain principles of comity where state or local law is concerned. *See* 18 U.S.C. §§ 3626(a)(1)(B), 3626(a)(2).

Comeaux does not meet his burden to persuade the Court that injunctive relief is appropriate under the governing legal standard or the restrictions found in the PLRA. Comeaux's failure to

carry his burden is fatal to his claims. *See PCI Transportation Inc.*, 418 F.3d at 545; *see also Stallworth v. Greer*, 227 Fed. App'x 415, 2007 WL 1454481 (5th Cir. 2007) (affirming the dismissal of a prisoner's complaint for global injunctive relief from retaliation by prison officials where the prisoner failed to carry his burden of persuasion). Importantly, a state prisoner does not have a constitutional right to be incarcerated in the prison of his choice. *See Meachum v. Fano*, 427 U.S. 214, 224 (1976); *see also Olim v. Wakinekona*, 461 U.S. 234, 245 (1983) (holding that a prisoner has no reasonable expectation of being incarcerated in a particular prison); *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996) ("A prisoner has no constitutionally protected interest in a particular facility."). Indeed, the Supreme Court has determined that state prisoners have no constitutionally protected interest in their custodial classification as a general matter:

> The Constitution does not require that the State have more than one prison for convicted felons nor does it guarantee that the convicted prisoner will be placed in any particular prison if, as is likely, the State has more than one correctional institution. The initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause, although the degree of confinement in one prison may be quite different from that in another. The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of its prisons. Neither, in our view, does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system. Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose. That life in one prison is much more disagreeable than another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules.

*Meachum v. Fano*, 427 U.S. 214, 224-25 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court recognized that a prisoner may have a liberty interest in avoiding conditions of confinement that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Absent a showing that a classification results in an "atypical and significant hardship," however, an inmate has no protectable liberty interest in his classification. *See,*

*e.g., Wilkerson v. Stalder*, 329 F.3d 431, 435-36 (5th Cir.), *cert. denied*, 540 U.S. 966 (2003); *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999); *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998); *Woods v. Edwards*, 51 F.3d 577, 581-82 (5th Cir. 1995).

Comeaux does not dispute that he was assigned to the Estelle High Security Unit after he assaulted two visitors, one of whom was his former wife, at the Jester III Unit. Thus, Comeaux's placement in administrative segregation was made for security reasons to keep officers and other inmates safe from his violent behavior. Under these circumstances, "[c]lassification of prisoners is a matter left to the discretion of prison officials," who must have "'broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status.'" *McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir. 1990) (citation omitted). "Prison officials should be accorded the widest possible deference in the application of policies and practices designed to maintain security and preserve internal order." *Id*. at 1251 (citing *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). Absent a showing that prison officials have abused their discretion, a federal court should be "loathe to interfere with custodial classifications established by prison officials." *Whitley v. Hunt*, 158 F.3d 882, 890 (5th Cir. 1998). Comeaux has not shown that prison officials have abused their discretion with regard to his custodial classification. Likewise, to the extent that Comeaux demands a transfer to the Jester III Unit on the grounds that his current conditions fail to meet his "basic life necessities and special needs," he is not entitled to an injunction in this instance because, for reasons set forth in more detail below, he fails to establish a valid statutory claim or a constitutional violation of the Eighth Amendment in this case.

## C.    Qualified Immunity

The defendants argue that they are entitled to qualified immunity from Comeaux's claims against them in their individual capacity. Public officials acting within the scope of their authority

generally are shielded from civil liability by the doctrine of qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800 (1982). "The doctrine of qualified immunity serves to shield a government official from civil liability for damages based upon the performance of discretionary functions." *Cozzo v. Tangipahoa Parish Council – President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Thompson v. Upshur Cty.,* 245 F.3d 447, 456 (5th Cir. 2001)). "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

In assessing qualified immunity, this Court must conduct a bifurcated analysis. *See, e.g., Collins v. Ainsworth,* 382 F.3d 529, 537 (5th Cir. 2004), *cert. denied*, 547 U.S. 1055 (2006). The threshold question has two parts. The initial inquiry asks whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the official's conduct violated a constitutional right. *See Scott v. Harris*, — U.S. —, —, 127 S. Ct. 1769, 1774 (2007) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If, and only if, the court finds a violation of a constitutional right, 'the next, sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case.'" *Id.* (quoting *Saucier*, 533 U.S. at 201). If the defendants' actions violated a clearly established constitutional right, the final step of the analysis asks whether qualified immunity is appropriate, nevertheless, because the defendants' "actions were objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Collins,* 382 F.3d at 537 (citations omitted).

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)). An official need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the official's

allegedly wrongful conduct violated clearly established law. *Id*. The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct. *Id*.

In this instance, the defendants argue that Comeaux has failed to establish a violation of the Americans with Disabilities Act (the "ADA") or the Rehabilitation Act (the "RA") and that he further fails to establish a violation of the Eighth Amendment. The defendants argue further that, even if a violation occurred, their actions were objectively reasonable under the circumstances. At the summary judgment stage of this case, a determination whether a constitutional right was violated for purposes of the first prong of the qualified immunity analysis overlaps substantially with a determination whether the plaintiff's claims lack merit. Accordingly, the Court first addresses whether Comeaux has raised a genuine issue of material fact on whether the conditions of his confinement violate the ADA or RA and whether the defendants committed a constitutional violation by acting with deliberate indifference to Comeaux's health or safety.

### 1.    Comeaux's Claims Under the ADA and RA

Alleging that the conditions of his confinement are inadequate in several respects, Comeaux claims that the defendants have subjected him to treatment and conditions that violate Title II of the ADA. Title II of the ADA, which governs access to "Public Services," provides in pertinent part that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (emphasis added). Comeaux also invokes the RA, which provides that "[n]o otherwise qualified individual with a disability . . . shall solely by reason of his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal

financial assistance . . . ." 29 U.S.C. § 794(a).  The ADA, which generally tracks the language set forth in the RA, expressly provides that "[t]he remedies, procedures and rights" available under the RA are also accessible under the ADA.  *Delano-Pyle v. Victoria County, Tex.*, 302 F.3d 567, 574 (5th Cir. 2002) (quoting 42 U.S.C. § 12133), *cert. denied*, 540 U.S. 180 (2003). The Fifth Circuit has recognized, therefore, that "[j]urisprudence interpreting either section is applicable to both." *See id.* (quoting *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000)).

The United States Supreme Court has held that Title II of the ADA applies to state prison facilities and state prison services.  *See Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998) (noting that state prisons "fall squarely within the statutory definition of 'public entity'" because the ADA, 42 U.S.C. § 12131(1)(B), defines public entity as "any department, agency, special purpose district, or other instrumentality of a State or States or local government").  The Supreme Court has also recognized that, "insofar as Title II creates a private cause of action against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."  *United States v. Georgia*, 546 U.S. 151, 159 (2006) (emphasis in original).  To establish a valid claim under Title II of the ADA, a plaintiff must show that (1) he is a qualified individual with a disability within the meaning of the ADA; (2) he was excluded from participation or denied meaningful access to services, programs, and activities, or that he was otherwise discriminated against by the defendants; and (3) such exclusion, denial of benefits, or discrimination is by reason of his disability.  *See Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421, 428 (5th Cir. 1997).  The defendants contend that Comeaux cannot meet these criteria and that he cannot establish a valid claim in this instance.

### a.    No intentional discrimination based on disability

The defendants maintain that Comeaux's conditions of confinement are fully compliant with the ADA and that he has not been excluded from participation or denied the benefits of any service, program, or activity of the sort available to other inmates confined to administrative segregation. In support, the defendants provide an affidavit from Tom Hunt, who is an Assistant Warden at the Estelle High Security Unit.  (Docket Entry No. 89, Exhibit B).  Warden Hunt notes that the Estelle Unit is equipped with twenty wheelchair cells in administrative segregation.  (*Id.*). These cells are reserved for wheelchair-bound inmates and are equipped with wider doors and other accommodations for this type of individual inmate.  (*Id.*).  Warden Hunt clarifies that "wheelchair inmates are subject to the same policies and procedures as non-wheelchair inmates" confined to administrative segregation in order to "ensure security and safety."  (*Id.*).  For example, all administrative segregation inmates are confined to their cells for 23 hours each day and must be restrained and escorted by security any time they are moved from their cell.  (*Id.*).

Although the Estelle Unit is not a "barrier-free facility," Warden Hunt explains that there is "no time when Offender Comeaux will be outside of his cell unless he is being escorted by security because of his . . . status" as an offender assigned to administrative segregation.  (*Id.*).  Warden Hunt reports that the administrative segregation cells for wheelchair-bound inmates are "wheelchair accessible and are equipped with showers inside the cells, so that offenders can take a shower and clean themselves during the prescribed shower time."  (*Id.*).  Each shower area reportedly has a stainless steel bench surrounded by support rails and a shower head that is lowered in order to accommodate inmates who are confined to a wheelchair. (*Id.*).  All cells are equipped with a toilet, a push-button sink, bed, mattress, and linens.  (*Id.*).  Warden Hunt reports that he is not aware of any

inmate, including Comeaux, who has a disability that prevents him from operating the sink or the shower.  (*Id.*).  Although the cells do not have a "call button", Warden Hunt reports that all of the wheelchair accessible cells are "directly adjacent to the officer's desk so that if they are in need of anything, the officer can hear the offender's request."  (*Id.*)

With regard to meals, Warden Hunt explains that all administrative segregation inmates receive their meals in the same manner.  (*Id.*).  At meal time, an officer will open the food tray slot and slide the offender's food tray to him.  (*Id.*).   The offender will take the food tray and the slot will be closed.  (*Id.*).  This procedure prevents inmates from throwing the trays at the officers.  (*Id.*).  According to Warden Hunt, all of the wheelchair-bound inmates at the Estelle Unit are capable of taking their food tray and feeding themselves.  (*Id.*).  Warden Hunt reports that he is not aware of any instance in which Comeaux has not been able to take his food tray or feed himself.  (*Id.*).

Warden Hunt states that he has seen no evidence that Comeaux is unable to take care of his own needs or that the Estelle Unit is unable to care for him.  (*Id.*).  Warden Hunt notes that, while Comeaux insists on using diapers, he cleans himself and changes his own diapers.  (*Id.*).  The diapers are then removed from Comeaux's cell on a regular schedule by inmates designated as orderlies (having Support Service Inmate or "SSI" status) or who are considered trustees.  (*Id.*).  These inmates also clean Comeaux's cell, with officers' supervision, to ensure that none of Comeaux's property is tampered with.   (*Id.*).  Under these circumstances, the defendants maintain that Comeaux's conditions of confinement comply fully with the ADA and do not deprive Comeaux of the ability to care for himself or result in the denial of life's basic human necessities.

Moreover, the defendants contend that Comeaux is not disabled within the meaning of the ADA.  Under the ADA, a "disability" means, with respect to an individual, "a physical or mental

impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). The defendants present an affidavit from Dr. Niak, who has reviewed Comeaux's medical records and has personally evaluated him on several occasions. (Docket Entry No. 89, Exhibit A). Dr. Niak explains that Comeaux apparently suffered a stroke prior to his arrival at the Jester III Unit and his assignment to the Estelle Unit. (*Id.*). While a stroke can be debilitating, it is not a "degenerative condition," meaning that the condition of patients who have had a stroke does not worsen as time passes, but may improve with time and they may regain functions that were lost through physical and occupational therapy. (*Id.*). A patient would have to suffer an additional stroke for his condition to worsen, and there is nothing to suggest that Comeaux has suffered an additional stroke. (*Id.*).

Dr. Niak notes that Comeaux is classified as having "independent wheelchair" status, which means that "while he is in a wheelchair, he is able to take care of his basic needs such as manipulating his wheelchair, brushing his teeth, eating, and other such tasks." (*Id.*). He is housed in the high security administrative segregation wing of the Estelle Unit because of his assaultive behavior. (*Id.*). He is specifically assigned to an independent wheelchair administrative segregation cell, which is completely wheelchair accessible. (*Id.*).

Dr. Niak refutes Comeaux's claim that he is not able to care for himself in tasks as simple as eating and moving. (*Id.*). According to Dr. Niak, if a patient needed help in performing simple tasks or was dependent, then certain effects would be noticeable in his range of motion, skin condition, weight, and cleanliness. (*Id.*). Comeaux, however, has not demonstrated any signs that he is unable to take care of himself. (*Id.*). Examinations of the patient, as well as reviews of videotapes recorded for the purpose of aiding in diagnosis, reveal that Comeaux has a functional

range of motion, that he is able to take care of himself, and that he can even stand at will. (*Id.*). The

videotapes, which are summarized further below, support Dr. Niak's assessment that Comeaux is

able to care for himself independently and that he is not hindered significantly by a recognizable

disability. (Docket Entry No. 91, Exhibits C and D).

The medical records, which are summarized in Civil Action No. H-00-3812, also support the

assessment that Comeaux has been functional and capable of caring for himself during the entire

period of time relevant to this lawsuit:

> The medical records indicate that Comeaux had an initial stroke in 1984,
> which allegedly left him "hemiplegic" or partially paralyzed on the left side of his
> body. (Docket Entry No. 61, Ex. B, *Medical Record*, at 3). A second stroke in 1996,
> affected his right side but was reportedly resolved without any residual paralysis or
> weakness on his right side. (*See id.*). According to Dr. Niak, Comeaux received a
> "full program" of physical therapy upon his return to prison in 1998. (Docket Entry
> No. 61, Ex. B). Comeaux's medical records reflect that he received PHOP
> rehabilitation counseling at the Jester III Unit from August of 1998, through June of
> 1999. (Docket Entry No. 61, Ex. A, *Medical Records* at 51-57).

> Dr. Niak explains that, in late 1999, Comeaux was returned to the Jester III
> Unit and referred to PHOP for occupational therapy for his right upper extremities.
> (*See id.*). That therapy took place over 19 weeks between January and May of 2000.
> (*See id.*). Dr. Niak explains that Comeaux's therapy took 19 weeks to complete "to
> compensate for the sessions he missed due to security reasons." (*Id.*). The medical
> records reflect that, after he completed this regimen, he was discharged to return to
> the Estelle High Security Unit and to follow a home exercise program. (Docket
> Entry No. 61, Ex. A, at 45). That assessment found that Comeaux was "I" or
> independent in "ADL's" or activities of daily living. (*See id.*).

> Dr. Niak notes in her affidavit that, during an evaluation on December 29,
> 1999, Comeaux "stood and walked with a normal gait." (Docket Entry No. 61, Ex.
> B.). Dr. Niak implies that Comeaux has exaggerated the extent of his paralysis or
> that he is malingering, noting that "[i]t requires no effort to not move a body part and
> then claim there is weakness and paralysis." (*Id.*). Comeaux denies that he is
> malingering. However, additional evidence in the medical records supports Dr.
> Niak's observation and her conclusion that the physical therapy sought by Comeaux
> was not required.

On October 24, 2000, Comeaux was seen at the Jester III Unit in conjunction with PHOP. (*See* Docket Entry No. 66, Ex. A, *Medical Records*, at 19). Dr. Largent observed that Comeaux complained of "right sided weakness which has not been documented" and he was "observed doing normal activities." (*Id.*). According to Dr. Largent's review, Comeaux had been evaluated recently at the John Sealy Hospital in Galveston, where his right side "showed good strength." (*Id.*). Thus, at that time, there was "no current indication for therapy." (*Id.*).

The medical records further reflect that Dr. Niak and two other officials visited Comeaux at the Estelle Unit High Security facility on April 30, 2001, to address his complaints about his housing. (*See id*. at 23). It was noted that Comeaux's right extremities were functional even though he claimed they were not during his medical examinations. (*Id.*). It was further noted that an officer had observed Comeaux use both arms prior to the visit. (*Id.*). Likewise, staff at the Estelle Unit observed that Comeaux could get in and out of his wheelchair and into bed on his own. (*Id.*). During the visit, neither Comeaux nor his bed were found to be dirty or unclean. (*Id.*).

A physical therapy evaluation conducted on April 30, 2001, noted that Comeaux had been observed using his left and right upper extremities to drink from a cup and to handle his food. (*See id*. at 29). A physical therapist observed Comeaux "wheeling his wheelchair" back and forth in his cell. (*See id*.). After the physical therapist further observed "multiple heavy books" on Comeaux's bed, the therapist asked Comeaux to demonstrate how he was able to move those books and Comeaux successfully demonstrated that he was able to use his right arm to do "transfer activities." (*Id.*). As a result of these observations, the therapist noted that no physical therapy was needed. (*Id.*).

An examination conducted at the John Sealy Hospital on May 4, 2001, noted that Comeaux had "normal muscle tone of lower and upper extremity on [the] left side with no evidence of atrophy." (*See id*. at 27). Because multiple witnesses observed Comeaux use his left arm to eat, the doctor noted that Comeaux's complaints of "hemiplegia" or partial paralysis was probably "malingering." (*Id.*). A clinic note dated June 25, 2001, showed that a nurse observed that Comeaux showed "good mobility" in his right upper extremities. (*See id*. at 29).

Civil Action No. H-00-3812, Docket Entry No. 70, at 8-12 (footnotes omitted). As noted above, the Fifth Circuit has already rejected Comeaux's claim that his discharge from the PHOP at the Jester III Unit posed a violation of the Eighth Amendment. *See Comeaux v. Mackwani, et al.,* No. 03-20776 (5th Cir. March 23, 2005), *cert. denied*, 546 U.S. 1103 (2006). Comeaux did not refute that

finding then and he cannot do so now. *See General Universal Sys., Inc. v. HAL, Inc.,* 500 F.3d 444, 453 (5th Cir. 2007) (noting that the mandate rule, which is a corollary of the law-of-the-case doctrine, "compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court") (citing *United States v. Castillo*, 179 F.3d 321, 329 5th Cir. 1999) (citation omitted)).

In addition to the medical records and the affidavits from Dr. Niak and Warden Hunt, the defendants present surveillance videotapes from 2003 and 2007, which show that Comeaux is functional and that he has not been denied adequate accommodations or the ability to care for himself. (Docket Entry No. 91, Exhibits C and D).[7] The videotapes depict Comeaux in his cell, leafing through books and materials with dexterity. The tapes show that he is able to move about in his cell with ease and that he has no difficulty negotiating the cell with his wheelchair by pushing off the floor with his feet or by using both hands. Comeaux is able to reach under his bed, pick up items of all kinds, and organize materials on his bed. The videotapes show that he has full range of motion in both arms. He is shown eating breakfast, drinking from a cup or carton, opening and closing a package or envelope without any problem. The videotape from 2007 shows Comeaux writing diligently for hours at a time, with his feet propped up on the bed as he reaches around his cell to pick up various reference materials. In both videotapes, he appears well nourished, groomed, alert, and in no distress. More importantly, both videotapes show that Comeaux is able to rise from his chair and stand on his own as he arranges the cushions and blankets that line his wheelchair. (Exhibit C, 19:10-11, April 20, 2003; 03:15, April 21, 2003; Exhibit D, 09:45-48, April 20, 2007).

---

[7]     The summary judgment motion was filed on October 26, 2007. (Docket Entry No. 89). The videotapes were filed shortly thereafter in a separate supplement. (Docket Entry No. 91).

Dr. Niak emphasizes in her affidavit that, in her professional medical opinion, Comeaux does not possess a physical impairment that substantially limits any of his major life activities, despite the fact that he insists he needs assistance caring for himself. (Docket Entry No. 89, Exhibit A). According to Dr. Niak, the Estelle Unit is adequately equipped to care for Comeaux's medical needs and the administrative segregation wing where Comeaux resides is wheelchair accessible. (*Id.*). Dr. Niak confirms that, "[a]t all times, Comeaux's housing assignment in a wheelchair [administrative segregation] cell at the Estelle Unit has been appropriate in light of his medical needs." (*Id.*).

The Supreme Court has noted that, "it is quite plausible that the alleged deliberate refusal of prison officials to accommodate [a prisoner's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs" may constitute "'exclu[sion] from participation in or . . . den[ial of] the benefits of' the prison's 'services, programs, or activities.'" *United States v. Georgia*, 546 U.S. 151, 157 (2006) (quoting 42 U.S.C. § 12132) (alteration in original). The record in this case falls far short of the showing required to make a claim under the ADA. In fact, the record illustrates that Comeaux's alleged disability is no more than a ruse.

The record contains no evidence that Comeaux has been denied adequate medical care and there is no showing that prison officials at the Estelle Unit have deliberately or intentionally discriminated against him regarding his disability-related needs. Comeaux, who has not filed a response to the summary judgment motion, does not refute any of the defendants' assertions. Comeaux appears to concede that the conditions of his confinement do not violate the ADA. In an effort to state a claim, Comeaux has attempted to limit this lawsuit to the time period of August 23, 1999, through September 9, 1999, when he alleges that he was left helpless in his wheelchair for

approximately fourteen days. During this time, Comeaux alleges that he was unable to brush his own teeth or perform any other activity associated with basic human needs. Comeaux's allegations are refuted by the record set forth above in Civil Action No. H-00-3812, and the videotapes provided by the defendants in this case as well as the affidavits from Warden Hunt and Dr. Niak. Likewise, Comeaux's contention that he was completely disabled in August 1999 is undercut completely by the undisputed fact that, in July of 1999, Comeaux had the physical capability to stab two people in the visitation room at the Jester III Unit.

Based on this record, Comeaux does not establish that he is disabled or that he has been excluded or denied participation in any program, service, or activity as the result of a disability. Likewise, the record fails to show that prison officials have failed to make necessary accommodations for Comeaux's needs or that, for lack of any accommodation, Comeaux has been made to suffer more than a non-disabled prisoner. As the defendants note, the fact that Comeaux is excluded from the prison dining hall and the law library is not a result of his disability, but rather a result of his classification status and assaultive behavior. More importantly, to the extent that Comeaux has suffered any adversity, it appears that he has been the cause of his own misfortune. In that respect, there is no evidence in the record to suggest that the complained of conditions of confinement were caused by any discrimination on the defendants' part. Comeaux's conclusional assertions do not show otherwise and they are not sufficient to set forth a claim for violation of the ADA. *See Hall v. Thomas*, 190 F.3d 693, 696 (5th Cir. 1999); *see also Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (holding that the ADA is not "violated by a prison's simply failing to attend to the medical needs of its disabled prisoners. No discrimination is alleged; Bryant was not treated worse because he was disabled."). Because Comeaux has not raised a genuine issue of material fact

showing that the defendants intentionally discriminated against him as a result of his disability, Comeaux fails to demonstrate a violation of the ADA or the RA.[8]

### b.    No individual Liability

Even if there was a violation of the ADA or the RA in this instance, Comeaux cannot state a claim against the defendants. In that regard, the defendants argue that Comeaux fails to state a valid claim under the ADA or the RA because the enforcement scheme does not authorize liability against an individual state official or employee. The definition of "public entity" that pertains to claims filed under Title II of the ADA does not include individuals.[9]  *See* 42 U.S.C. § 12131(1)(B). Employing a limited construction of the statutory definition of public entity, courts that have addressed the question have concluded that individual defendants cannot be held liable for violation of Title II of the ADA. *See Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 & n.8 (8th Cir. 1999) (en banc), *cert. dismissed*, 529 U.S. 1001 (2000); *Arlt v. Missouri Dep't of Corrections*, 229 F. Supp.2d 938, 942 (E.D. Mo. 2002);  *Lewis v. New Mexico Dep't of Health*, 94 F. Supp.2d 1217, 1230 (D. N.M. 2000); *Calloway v. Glassboro Dep't of Police*, 89 F. Supp.2d 543, 557 (D. N.J. 2000); *see also  Joseph v. Port of New Orleans*, Civil Action No. 99-1622, 2002 WL 342424, at *10

---

[8]     Notably, this case was stayed from January 11, 2006, through August 20, 2007, after Comeaux initiated a complaint with the Department of Justice Civil Rights Division, regarding whether the conditions of his confinement violated the ADA. (Docket Entry Nos. 55-56, 72-73).  DOJ conducted an investigation and declined to file a case on Comeaux's behalf.  (Docket Entry No. 72).

[9]     Title II of the ADA, which is the provision at issue in this case, prohibits discrimination against disabled individuals by a "public entity." 42 U.S.C. § 12132.  There is no question that Title I of the ADA, which prohibits discrimination against disabled individuals by employers, does not allow suits against individuals who do not otherwise qualify as an "employer."  42 U.S.C. 12111(2) & 12112(a).  *See Albra v. Advan, Inc.*, 490 F.3d 826, 830 (11th Cir. 2007); *see also Kacher v. Houston Comm. College System*, 974 F. Supp 615, 619 (S.D. Tex. 1997) (individuals acting in their individual capacity who do not meet statutory definition of "employer" cannot be sued under the ADA) (citations omitted).

(E.D. La. March 4, 2002) ("The majority of courts that have addressed the issue have held that the ADA does not permit claims against persons in their individual capacities."), *aff'd*, No. 02-30297, 2002 WL 31933280 (5th Cir. Dec.27, 2002).

Although the Fifth Circuit has not expressly addressed the question of individual liability under Title II of the ADA, it has recognized that a plaintiff cannot sue an individual under the Rehabilitation Act, 29 U.S.C. § 794(a), which provides a comprehensive remedial framework and enforcement provisions similar to the ADA. *See Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999); *see also Holbrook v. City of Apharetta*, 112 F.3d 1522, 1531 (11th Cir. 1997) (concluding that a plaintiff may not maintain an action against individuals under 42 U.S.C. § 1983 in lieu of – or in addition to – a Rehabilitation Act or ADA cause of action); *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) (holding that "a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act"), *cert. denied*, 537 U.S. 1104 (2003). To the extent that Comeaux complains that the individual defendants violated his civil rights by abridging the ADA, his claims against the individuals listed in his complaint fail to state a valid cause of action as a matter of law.[10]

### 2.     Eighth Amendment

Comeaux complains that, by denying him access to adequate accommodations in violation of the ADA and the RA, prison officials have forced him to endure cruel and unusual conditions of

---

[10]     Comeaux has failed to allege facts showing that he is entitled to the monetary damages that he seeks under the ADA, which authorizes, at most, compensatory damages upon a showing of intentional discrimination. *See Delano-Pyle v. Victoria County, Tex.*, 302 F.3d 567, 574 (5th Cir. 2002), *cert. denied*, 540 U.S. 810 (2003). Punitive damages are not available under the ADA. *See Barnes v. Gorman*, 536 U.S. 181, 189-90 (2002). While a suit for prospective injunctive relief may be available against state employees in their official capacity, Comeaux fails to show that he is entitled to relief of this nature here. *See McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 413-14 & n.6 (5th Cir. 2004).

confinement of the sort prohibited by the Eighth Amendment to the United States Constitution. It is well settled that the United States Constitution does not require comfortable prisons. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). However, it is equally well established that conditions of confinement "must not involve the wanton and unnecessary infliction of pain." *Rhodes*, 452 U.S. at 347. In that respect, the Eighth Amendment's prohibition against cruel and unusual punishment does require that prisoners be afforded "humane conditions of confinement," including adequate food, shelter, clothing, and medical care. *Farmer*, 511 U.S. at 832. Thus, to demonstrate that prison conditions violate the Eighth Amendment, an inmate must meet the following requirements: (1) an objective requirement showing that the condition is "so serious as to 'deprive prisoners of the minimal civilized measure of life's necessities,' as when it denies the prisoner some basic human need;" and (2) a subjective requirement, which mandates a showing that prison officials have been "'deliberately indifferent' to inmate health or safety." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (citing *Farmer*, 511 U.S. at 834) (citations omitted).

Comeaux has failed to show that the conditions of his confinement violate the ADA or the RA, and he likewise fails to demonstrate that his assignment to the administrative segregation wing of the Estelle High Security Unit has deprived him of the ability to meet his own basic human needs. Likewise, he does not show that prison officials have acted with deliberate indifference to his health or safety by confining him to the Estelle High Security Unit. As noted above, Comeaux has not filed a response to the summary judgment motion and he has not refuted any of the evidence presented by the defendants, which shows that he has been functional and capable of caring for himself at all times relevant to this lawsuit. His failure to respond is fatal to his quest for an injunction under the

Eighth Amendment. In that respect, to survive summary judgment an inmate seeking an injunction "must come forward with evidence from which it can be inferred that the defendant-officials were at the time suit was filed, and are at the time of summary judgment, knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so; and finally to establish eligibility for an injunction, the inmate must demonstrate the continuance of that disregard during the remainder of the litigation and into the future." *Farmer*, 511 U.S. at 846. A reviewing court may only grant appropriate injunctive relief if it finds that the Eighth Amendment's subjective and objective requirements are satisfied. *See id.* (citing *Hutto v. Finney*, 437 U.S. 678, 685-688 & n.9 (1978) (upholding an order designed to halt "an ongoing violation" in prison conditions that included extreme overcrowding, rampant violence, insufficient food, and unsanitary conditions)). Comeaux has not satisfied those requirements in this instance. The Court concludes, therefore, that Comeaux's claim that the conditions of his confinement constitute cruel and unusual punishment is without merit. *See Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (holding that a prisoner's Eighth Amendment claim regarding certain restrictions imposed in administrative segregation was frivolous), *cert. denied*, 527 U.S. 1041 (1999).

### 3. Objective Reasonableness

Because Comeaux has failed to establish a constitutional or statutory violation, the Court need not proceed to the final step of the qualified immunity analysis. *See Hathaway v. Bazany*, 507 F.3d 312, 320 (5th Cir. 2007). Nevertheless, the defendants argue that, even if a violation occurred, they are entitled to qualified immunity from suit because they have acted in good faith and their conduct was objectively reasonable under the circumstances. To avoid summary judgment on the defendants' qualified immunity defense, a plaintiff must present evidence to raise a fact issue

"material to the resolution of the questions whether the defendants acted in an objectively reasonable manner in view of the existing law *and facts available to them*." *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993), *cert. denied*, 511 U.S. 1019 (1994) (emphasis added). If reasonable public officials could differ as to whether the defendant's actions were lawful, the defendant is entitled to immunity. *See Malley*, 475 U.S. at 341 (1986). "Even if a defendant's conduct actually violates a plaintiff's constitutional rights, the defendant is entitled to qualified immunity if the conduct was objectively reasonable." *Zarnow v. City of Wichita Falls, Tex.*, 500 F.3d 401, 408 (5th Cir. 2007) (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990)).

Where qualified immunity is asserted, Comeaux, as the plaintiff, has the burden to produce admissible evidence that raises a genuine issue of material fact on whether the defendants' actions were objectively unreasonable under the circumstances in view of existing law and the facts known to them. *See Michalik*, 422 F.3d at 262. Comeaux does not meet that burden here. As outlined above, the summary judgment evidence reflects that he does not possess a physical impairment that substantially limits any of his major life activities and that there is no reason that he cannot perform those activities or meet his own basic human needs. The record further shows that the Estelle High Security Unit is equipped to meet his needs and that his housing assignment has been appropriate at all times relevant to this lawsuit. Comeaux's conclusory allegations to the contrary do not raise a genuine issue of material fact on whether the defendants' actions were unreasonable under the circumstances and are not sufficient to overcome the defendants' assertion of qualified immunity in this instance. The Court concludes, therefore, that summary judgment on the defendants' assertion of qualified immunity is warranted.

**D.      Remaining Claims**

The amended complaint filed by Comeaux includes allegations of negligence on the part of prison officials and claims that officials have denied Comeaux access to the courts in violation of federal and state law.  Technically, these allegations are outside of the Fifth Circuit's mandate in this case.  In that respect, the remand order issued by the Fifth Circuit instructed the Court to inquire further into whether Comeaux's conditions of confinement violated his rights by denying him access to life's basic necessities.  These claims are limited to Comeaux's allegation that his conditions violated the ADA or the RA, and the Eighth Amendment.  The mandate rule requires a district court on remand to effect the appellate court's mandate and to do nothing else.  *See United States v. Becerra*, 155 F.3d 740, 753 (5th Cir. 1998).  Nevertheless, a brief review of Comeaux's additional claims shows that they are without merit.

**1.      Negligence**

In addition to his claim under the ADA, the RA, and the Eighth Amendment, Comeaux complains that the defendants have violated state law by negligently failing to take reasonable measures to meet his special needs.  (Docket Entry No. 20, at 21-22).  A state law claim of negligence requires three elements: (1) a legal duty owed by one person to another, (2) a breach of that duty, and (3) damages proximately caused by the breach. *See D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002). The record in this case fails to establish, as Comeaux complains, that officials at the Estelle Unit have negligently failed to meet his needs or that they have failed in some way to provide for the basic necessities of life.  (Docket Entry No. 20, at 22).  This claim is legally frivolous and subject to dismissal under 28 U.S.C. § 1915(e)(2)(B).

## 2.    Denial of Access to Courts

Comeaux complains that he has been denied access to the courts because he has had inadequate access to the prison grievance process and sufficient legal supplies. The constitutional right implicated by Comeaux's allegations is the right to access the courts that is generally protected by the First Amendment, the Due Process Clause, and the Equal Protection Clause. *See Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002) (collecting cases that demonstrate the "unsettled . . . basis of the constitutional right of access to courts"). Prisoners clearly have a constitutionally protected right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 360 (1996) (citing *Bounds v. Smith*, 430 U.S. 817 (1977)). However, the right of access for prisoners is not unlimited. *See Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (citing *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.), *cert. denied*, 522 U.S. 995 (1997)). The right encompasses only a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement. *See Jones*, 188 F.3d at 325 (citing *Lewis*, 518 U.S. at 351). In that regard, inmates are "not guarantee[d] the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Lewis*, 518 U.S. at 355. Instead, they are guaranteed "the conferral of a capability — the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Id*.

To establish a denial of access to the courts, a prisoner must demonstrate "actual injury." *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999) (citing *Lewis*, 518 U.S. at 351-54); *see also Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998). In other words, to prevail, Comeaux must establish that "his position as a litigant was prejudiced by his denial of access to the courts." *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998). Comeaux's conclusory allegations do not

demonstrate that he has been denied the right to bring a non-frivolous claim concerning his underlying convictions, his sentence, or the conditions of his confinement. Likewise, his litigation history shows that he has not been denied access to the courts.[11] Based on this record, Comeaux's allegation that he has been denied access to courts is frivolous and must be dismissed under 28 U.S.C. § 1915(e)(2)(B).

### E.      Remaining Defendants

Other than Warden Thaler and former Director Dretke, the remaining defendants named in the complaint have not been served and have not appeared in this case. Those defendants are: Dr. Bobby Vincent, Major William De La Rosa, Lieutenant Mark Biscamp, Lieutenant Philip Graham, Lieutenant Curtis Roberts, Lieutenant Michael Butcher, Sergeant Stephen Nicholas, Sergeant

---

[11]      A national litigation index reveals that Comeaux has filed at least eight civil actions, including federal habeas corpus petitions, in this district. *See Comeaux v. Mackwani, et al.*, Civil Action No. H-00-3812 (S.D. Tex.); *Comeaux v. Thaler, et al.*, Civil Action No. H-01-1411 (S.D. Tex.); *Comeaux v. Cockrell, et al.*, Civil Action No. H-01-1670 (S.D. Tex.); *Comeaux v. Cockrell*, Civil Action No. 4:01-3405 (S.D. Tex.); *Comeaux v. Cockrell*, et al., Civil Action No. H-01-4264 (S.D. Tex.); *Comeaux v. Cockrell, et al.*, Civil Action No. H-02-0058 (S.D. Tex.); *Comeaux v. Biscamp, et al.*, Civil Action No. H-02-4144 (S.D. Tex.); *Comeaux v. Sutton*, Civil Action No. H-03-2555 (S.D. Tex.). Comeaux has also filed numerous appeals to the Fifth Circuit. *See Comeaux v. Mackwani*, No. 01-20584 (5th Cir.); *Comeaux v. Cockrell*, No. 02-20444 (5th Cir.); *Comeaux v. Cockrell*, No. 02-20663 (5th Cir.); *Comeaux v. Cockrell*, No. 02-21283 (5th Cir.); *Comeaux v. Mackwani*, No. 03-20776 (5th Cir.); *Comeaux v. Sutton*, No. 06-20869 (5th Cir.). Because more than three of these actions or appeals have been dismissed as frivolous, malicious, or for failure to state a claim for purposes of 28 U.S.C. § 1915(g), Comeaux may no longer proceed *in forma pauperis* absent a showing that he is in imminent danger of serious physical injury. *See Comeaux v. Cockrell*, Appeal No. 02-20444 (5th Cir. July 15, 2003) (notifying Comeaux that he has accrued three strikes). It is apparent that Comeaux has also filed several *pro se* proceedings in the state courts. *See In re Comeaux*, No. 10-07-00235-CV, 2007 WL 4260638 (Tex. App. — Waco, Dec. 5, 2007); *In re Comeaux*, No. 14-07-00364-CV, 2007 WL 1319431 (Tex. App. — Houston [14th Dist.] May 8, 2007); *Comeaux v. TDCJ*, 193 S.W.3d 83, 2006 WL 488691 (Tex. App. — Houston [1st Dist.] March 2, 2006); *Comeaux v. TDCJ*, No. 14-02-01283-CV, 2005 WL2978891 (Tex. App. — Houston [14th Dist.] Nov. 8, 2005); and *Comeaux v. Ragan*, No. 14-04-00601-CV, 2004 WL 1797572 (Tex. App. — Houston [Dist. 14] Aug. 12, 2004).

Brugman, Sergeant Travis Rowe, Sergeant Monica Steinbuck, Sergeant Adriane McCoy, physician's Assistant Randall Healy, Director of Nurses Anderson, Nurse Kelly Dusek Young, Nurse Patricia Freeman, an unknown John or Jane Doe grievance investigator, Officer Alicia White, Lieutenant Robert Quada, and Dr. Jason Calhoun.

The Fifth Circuit has recognized that when one defending party establishes that the plaintiff has no cause of action, as Thaler and Dretke have in this case, this defense generally inures also to the benefit of other similarly situated defendants. *See Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) (quoting *United States v. Peerless Ins. Co.*, 374 F.2d 942, 945 (4th Cir. 1967) (citations omitted)). The motion filed by Thaler and Dretke disposes of all of the claims raised in the complaint. Therefore, the Court dismisses Comeaux's claims against the remaining defendants under 28 U.S.C. § 1915(e)(2)(B) as without an arguable basis in law.

### F. Plaintiff's Motion

Comeaux has filed a motion for a temporary restraining order. (Docket Entry No. 98). He has also filed a memorandum in support of that motion. (Docket Entry No. 99). In that motion, Comeaux seeks an injunction under Rule 65 of the Federal Rules of Civil Procedure because officials at the Estelle Unit confiscated portions of his legal property on February 1, 2008. The property was reportedly confiscated as "improperly stored" in violation of prison policy. In particular, Comeaux claims that the officers confiscated his response to the summary judgment motion. He seeks an injunction ordering prison officials to return his legal material, to provide plaintiff with copies of the defendants' motion for summary judgment in this case, along with the discovery that has been exchanged to date, and access to a complete set of law books so that

Comeaux may adequately re-draft a response in a timely manner. He also asks the Court to enjoin prison officials from opening his mail and harassing him by confiscating his legal property.

The Fifth Circuit has explained that "[a] temporary restraining order is a 'stay put,' equitable remedy that has as its essential purpose the preservation of the status quo while the merits of the cause are explored through litigation." *Foreman v. Dallas County, Tex.*, 193 F.3d 314, 323 (5th Cir. 2000). A temporary restraining order or preliminary injunction "is typically granted during the pendency of a lawsuit to prevent irreparable injury that may result before a final decision on the merits." *Shanks v. City of Dallas, Tex.*, 752 F.2d 1092, 1096 (5th Cir. 1985).

Rule 65 of the Federal Rules of Civil Procedure governs the granting of preliminary injunctions and temporary restraining orders. Under Rule 65(a)(1), no preliminary injunction may be issued unless the adverse party has notice. *See Harris County, Tex. v. CarMax Auto Superstores, Inc.*, 177 F.3d 306, 326 (5th Cir. 1999). "Compliance with Rule 65(a)(1) is mandatory." *Parker v. Ryan*, 960 F.2d 543, 544 (5th Cir. 1992). A temporary restraining order may be granted without notice only if the requesting party makes a clear showing that immediate and irreparable injury, loss, or damage may occur and that efforts have been expended to give notice to the adverse party. *See* FED. R. CIV. P. 65(b). Furthermore, the requesting party must give security in the amount the court deems proper, unless the party is the United States or one of its officers or agencies. *See* FED. R. CIV. P. 65(c).

Comeaux's motion for a preliminary injunction contains no certificate of service showing that the plaintiff has served his motion on any of the defendants. (Docket Entry No. 98). Likewise, it appears that Comeaux has not provided a copy to the defendants' counsel of record in violation of the Federal Rules of Civil Procedure and Court orders in this case. (Docket Entry No. 25).

Although Comeaux's memorandum of law does contain a certificate of service, it is not clear that he has met the other requirements for injunctive relief. In that respect, he does not show a substantial likelihood that he will prevail on the merits or that granting the preliminary injunction will serve the public interest in this case. *See Planned Parenthood of Houston & Southeast Texas*, 403 F.3d at 329.

The defendants filed their motion for summary judgment on October 26, 2007, and Comeaux was afforded an opportunity to view the videotaped surveillance footage that discloses his lack of impairment. Since that time, the Court has granted Comeaux lengthy extensions of time, up until February 8, 2008, in which to file his response. (Docket Entry Nos. 93, 97). Comeaux did not file a response to the summary judgment motion within this time. Instead, he waited until March 13, 2008, to submit his motion for a temporary restraining order, complaining that his paperwork had been taken.

In his motion, Comeaux complains that the affidavits submitted by Dr. Niak and Assistant Warden Hunt are false and that he remains housed in conditions that are inadequate to meet his needs as a handicapped inmate. Comeaux does not and cannot refute what is shown on the surveillance videotapes, however, other than to argue that the videos were taken in violation of his right to privacy and not for the purpose of diagnosing his medical condition. Those arguments are without merit. See *Oliver v. Scott*, 276 F.3d 736, 745 (5th Cir. 2002) (noting that a prisoner's right to privacy is minimal at best and must yield to legitimate penological interests). Comeaux offers no valid excuse for his failure to file a timely response, and he presents only conclusory assertions in support of his claim that an additional extension will allow him to raise a genuine issue of

material fact.  His request for additional time and his motion for a temporary restraining order or injunction is denied.

**IV.     CONCLUSION AND ORDER**

Based on the foregoing analysis, the Court concludes that Comeaux has failed to establish a valid claim under 42 U.S.C. § 1983 and that the defendants are entitled to summary judgment.  All of Comeaux's remaining allegations fail to state a valid claim for which relief can be granted.

Accordingly, the Court **ORDERS** as follows:

1.     The defendants' motion for summary judgment (Docket Entry No. 89) is **GRANTED**.

2.     The plaintiff's motion for a temporary restraining order (Docket Entry No. 98) is **DENIED**.

3.     The complaint is **DISMISSED** with prejudice.

The Clerk will provide a copy of this order to the parties.

SIGNED on March 24, 2008.

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE